Galante, Christine

Page   1

## COMPLAINT

Christine Galante

v.  8:13-CV-3235-T-35 TBM

Nielsen Co US LLC/Scarborough Research

I was hired by The Nielsen Co. US LLC/Scarborough Research in August of 2010 as a part-time Telephone Interviewer. In early January of 2012 I informed the center manager, scheduler, and production manager in a closed-door meeting that I had been diagnosed with Stage-4 metastatic cancer.

On January 17, 2012, I informed the company (1 mo. in advance) via company email that I needed time off for treatment-related surgery. On 1/18/2012 I met with the scheduler to discuss the needed leave time for surgery and recovery. **I was told that I did not qualify** for any such leave time because under the Family Medical Leave Act, I had not accrued enough working hours in the past year; that I was "slightly under." **I was repeatedly urged to resign from my position** (to have the needed surgery), **and then re-apply for my job once recovered, although there would be no guarantee of being rehired.** I told the scheduler that I did not want to resign, however she insisted that this was "company policy" and that this was what everyone who has ever needed time off (and did not qualify for FMLA) has done.

When I asked the scheduler, **"Why wouldn't I qualify for leave time under the Americans with Disabilities Act, since I have a documented and qualifying disability,?"** she stated, **"We don't have that here; We're thinking about instituting it this year, it may happen, but as for now we just don't have that."  She again steadfastly urged me several times to resign from my job.** I told the scheduler I would "process this," and get back to her. This is a company that employs more than 500 nationwide and more than 200 in this call center alone.

On 1/20/2012 I provided the scheduler with a letter from my surgeon on letterhead (dated 1/19/2012). The scheduler forwarded the letter via company fax to an HR manager in a regional corporate office, and within a few days informed me that **again my request for leave was denied. Although the scheduler and the managers knew that this was treatment-related surgery for a qualifying ADA disability, I was again urged to "resign and re-apply."**

Following this second denial I phoned the Job Accommodation Network for assistance and to report the company's denial of my rights. I again wrote a letter requesting leave time (dated 1/31/2012) which was hand-delivered to both the scheduler and the center manager, and which was also forwarded to the HR manager in the regional corporate office.



Galante, Christine                                              Page 2

On 2/01/2012 I received a 3-page letter from the HR manager requesting an additional amount of lengthy and supporting data from my Doctor's office, and that she must receive it within 9 days, by 2/10/2012.

I again phoned the Job Accommodation Network as well as my surgeon's office to request yet another letter for the Company. My surgeon's office sent two additional letters (one dated 2/08/2012) repeatedly providing supporting information in the hopes that the HR manager would not only give the necessary leave time for surgery, but also that my emotional state regarding the impending surgery and the continued, building anxiety the Company was fueling by repeatedly denying the leave time would be abated.

Day after day after day the scheduler was in my face repeating the same narrative:

"You need to quit your job Christine"
"You just need to quit Christine"
"I told you, you need to quit your job" over and over again, every time I asked whether my leave had been approved.

**I was "called off" from working** my final (scheduled) 2 shifts before surgery (2/14/2012 and 2/15/2012) by the scheduler, who left phone messages at my home stating there "was no work" and to not come in. As if not being paid for any leave time wasn't financially-strapping enough.

Finally, on 2/13/2012, just 4 days prior to surgery, the HR manager approved the leave time; this letter was received by me on 2/15/2012, 2 days prior to surgery. In the letter, the HR manager writes, **"Based on the information provided, this letter serves as notice that you are eligible under ADA guidelines and a leave...is approved."** This leave was approved for up to 4 weeks.

I suspected that returning to work would be as difficult, and so in an effort to avoid such difficulty and additional, unnecessary stress and anxiety, on my post-op appointment with my surgeon, I requested a return-to-work letter that I could provide to my very difficult employer.

On 3/13/2012, and within the approved time frame for leave, I faxed both the scheduler and the HR manager a letter from my surgeon and a note from myself that I was ready to return to work, albeit with a slight and temporary accommodation.

On that same day **I was denied a return to work (after disability-related surgery) with a reasonable accommodation of a modified schedule, as requested by my surgeon** by both the scheduler and the HR manager, even though both knew and one had previously provided written acknowledgement of, ADA-eligibility.

Galante, Christine                                           Page 3

The HR manager told me that she "did not have to allow for any accommodation that would be detrimental to the business." She stated that it would be detrimental to the business to put me in a booth for only 3 hours, instead of putting someone in that same booth for 4 hours.

At this time (and for at least 3-4 months prior) in the call center, management was utilizing the **Early Out List.** Because there are times during the year when obtaining telephone surveys slows, the Early Out List is utilized to keep company expenses down. The Early Out List is kept on a table by the entrance to the call center; employees write down their name and booth number if they are interested in going home early; no excuses needed.

I tried to reason with the HR manager that more than half of the employees in the call center had been going home early for months; often after only 30 minutes of arriving for work.

With all these employees going home early each night for months, why was it detrimental for *me* to leave early? She only answered in the same narrative.

The slight and temporary accommodation consisted of only one hour less per shift for only the initial 2 weeks of return.

On 3/15/2012 I filed a Charge of Discrimination with E.E.O.C. in the Tampa Field Office.

On 3/16/2012 I faxed a letter to the scheduler letting her know that I was still willing to come into the call center to work a 3-hour shift as outlined by my surgeon. The scheduler phoned me at home and denied my request stating, "I can't let you work until your Dr. says you can work 4 hours; I'm just following what my HR Dept. tells me; what Leanne tells me."

Also on that same day I phoned a co-worker to confirm whether the Early Out List was still being utilized. He stated, "last night, all week, everyday;" and that it most likely (as reported by management in nightly employee meetings) would continue to be in use for the next 2 weeks."

Following the filing of the Charge of Discrimination, I received at least 2 emails (that I saved) from the HR manager that were replete with lies and argumentative in nature.

The repeated actions (denial of rights) and repeated verbal intimidations (to resign from my position and re-apply) for the previous 2 months, combined with the emails from the HR manager constituted a hostile work environment.

Galante, Christine                                                      Page 4

The undue stress and anxiety I endured each and every day had reached a limit. I knew that it would be unwise, in my battle against cancer and preservation of peace of mind, to return to work in this call center, and I let the investigations of the E.E.O.C. run their course.

This is a very authoritarian company for which to work. The attendance and break policies are very strict. Taking too many minutes for a bathroom break may result in a write-up or worse. I believed I was doing the right thing by being honest with my employer in early January, 2012, when I informed them of my terminal illness, and that things may "get bad;" that "unpleasant symptoms" are likely to be in my future. I informed them at that time that I did not want to quit my job, and that I was a "fighter" and would get through it. I believe, however, the thought of me traipsing through the call center to the restroom more times than one could count during a shift was not going to work for them. They knew I would need additional break time; that I would be on the phone for less time, while the pay clock was running. They knew it would appear as though I was receiving special treatment and not be able to explain why. I believe from the beginning, from that first day I informed them of my illness, they planned to use any means to force me out.

In 2005, all people with cancer were included in the remit for the Disability Discrimination Act and given new legal protection(s) including, but not limited to:

*Allowing time off for medical appointments without it having to be taken off holiday allowance or sick pay
*Creating more flexibility in working hours
*Allowing extra breaks to cope with tiredness
*Assistance with a phased return to work, whereby hours are gradually increased over a period of time
*Being unfairly treated in comparison with other workers

I believe that I have been treated unfairly and discriminated against on the basis of my disability, in violation of the Americans with Disabilities Act.

I have received a Right To Sue Notice from the EEOC (dated 8/27/2013)

The date mailed from the EEOC (as stamped by USPS) is dated 9/30/2013.

The Notice was received by me on 10/15/13.

Galante

P.O. Box 2011
Sarasota, FL 34276
(941) 922-7847
cginf1@aol.com